UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>and<br><br>BRENT M. NELSON,<br><br>          Relator,<br>v.<br><br>CAREER EDUCATION CORPORATION,<br>SANFORD-BROWN, LIMITED, and<br>ULTRASOUND TECHNICAL SERVICES,<br>INC.,<br>         Defendants. | Case No. 12-CV-775-JPS<br><br><br><br>ORDER |

1. BACKGROUND

Brent M. Nelson, the relator in this *qui tam* action filed under the False Claims Act, 31 U.S.C. §§ 3729-33, brings claims against defendants Career Education Corporation, Sanford-Brown, Limited, and Ultrasound Technical Services, Inc. (collectively, "Defendants") for allegedly fraudulent conduct in connection with false claims for federal subsidies under the Higher Education Act. (Docket #12).[1]

Defendants jointly move to dismiss Relator's first amended complaint (*id.*) on grounds that Relator: (i) fails to state any claim upon which relief can be granted (Federal Rule of Civil Procedure 12(b)(6)); or, in the alternative, (ii) fails to state with particularity the circumstances constituting the alleged frauds (Fed. R. Civ. P. 9(b)). (Docket #20).

---

[1] The United States has declined to intervene. (Docket #9); 31 U.S.C. § 3730(b)(4)(B).

2. RELATOR'S FIRST AMENDED COMPLAINT

Below, the Court briefly summarizes the factual allegations and legal claims set forth in Relator's first amended complaint. (Docket #12).

In order to obtain a certification of eligibility to participate in programs for federal subsidies under the HEA, Defendants entered into Program Participation Agreement(s) ("PPA(s)") with the federal government certifying Defendants' future compliance with, *inter alia*, "the statutes and regulations for institutional eligibility…." ("Eligibility Requirements") (Docket #12, ¶ 3). However, Defendants did so notwithstanding their "actual knowledge that…their representations of adherence were and are false…." (*Id.*, ¶ 8).

In particular, Defendants perpetrated the following violations of Eligibility Requirements: (i) "directly compensa[ting employees] based upon success in securing enrollments" in contravention of "20 U.S.C. § 1094(a)(20)" (Docket #12, ¶¶ 63-67); (ii) providing the Accrediting Council for Independent Colleges and Schools with inaccurate information—"misleading and inflated [job] placement figures and data," "forg[ed]…faculty performance reviews," and grade data reflecting grade inflation—in violation of "20 U.S.C. § 1094(a)(21)" (Docket #12, ¶¶ 68-79); (iii) "falsifying student attendance records" in violation of "20 U.S.C. §§ 1091b, 1094" (Docket #12, ¶¶ 54, 57 and 61); (iv) "harassing students to attend class" in violation of "20 U.S.C. §§ 1091b, 1094" (Docket #12, ¶¶ 54, 58 and 61); (v) inflating student grades to "maintain a cumulative C average" in violation of "20 U.S.C. ¶ 1091" (Docket #12, ¶¶ 36 and 48-53); and (vi) admitting students with remedial needs into accelerated programs in violation of "20 U.S.C. § 1002" and "34 C.F.R. § 668.32(f)." (Docket #12, ¶¶ 37-46).

Moreover, "[d]uring the 2008-2009 school year, and upon information and belief, from 2006 to the present, Defendants submitted or caused to be submitted false claims and/or applications for Title IV/HEA funding." (*Id.* at ¶ 32).[2]

These false claims are actionable under § 3729(a)(1) because of Defendants': (i) causal nexus to the false funding applications; together with (ii) knowledge of: (a) the Eligibility Requirements (by virtue of executing PPA(s) certifying future compliance with such requirements); and (b) on-going violation(s) of one or more of such requirements.

In addition, Defendants fraudulently "used"—within the meaning of § 3729(a)(2)—the PPA(s) (which formed the foundation for their institutional eligibility) when Defendants made (or caused students to make or use) false funding applications because they knew that the PPA(s)' certification(s) of compliance with Eligibility Requirements were not accurate.[3]

3.    DEFENDANTS' JOINT MOTION TO DISMISS

Defendants mount three categories of attack on Relator's first amended complaint: (i) Relator fails to state any claim upon which relief can

---

[2] Relator appears to reason that the funding applications were false because the student represented that he or she was enrolled at an eligible institution when, (usually) unbeknownst to the student, the eligibility upon which the application was predicated had been destroyed by the Defendants' noncompliance with one or more Eligibility Requirements. (Docket #26, 11); *See generally, U.S. ex rel. Main v. Oakland City University*, 426 F.3d 914, 916 (7th Cir. 2005).

With regard to the time period alleged, Relator appears to extrapolate from his tenure of employment "as the Director of Education/Chief Education Officer at Sanford-Brown College in Milwaukee, Wisconsin…from roughly June 2008 until January 2009." (Docket #12, ¶ 16).

[3] Relator appears to rely on the teachings of the Seventh Circuit in *U.S. ex rel. Main v. Oakland City University*, 426 F.3d 914, 916 (7th Cir. 2005). (Docket #26, 14).

be granted because: (a) "Relator does not plead a misrepresentation (as opposed to a mere breach of contract)" (Defense One); and (b) "the conduct [Relator] complains of does not violate the [Eligibility Requirements] he identifies" (Defense Two); and (ii) Relator "fails to plead the 'who, what, when, where and how'" of the alleged frauds (Defense Three). (Docket #20, 1). Below, in Section Five, the Court addresses each category in turn.

4.     APPLICABLE LAW

In general, under the federal notice pleading protocol, the plaintiff is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's statement need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In other words, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by

factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

5. ANALYSIS

    5.1    Defense One: Does Relator Allege Fraud (In General)?

        5.1.1    Relevant Statutory Iterations

As noted *supra* in Section Two, Relator's first amended complaint brings claims for the period "from 2006 to the present" (Docket #12, ¶ 32) based on 31 U.S.C. §§ 3729(a)(1) and (a)(2). (*Id.*, ¶¶ 80-94). However, *U.S. ex rel. Yannacopoulos v. General Dynamics* teaches that:

> In 2009, Congress amended the False Claims Act, Pub. L. 111-21, § 4(a)(1), making those amendments generally applicable only to conduct occurring on or after May 20, 2009, Pub. L. 111-21, § 4(f). The one exception is the amendment to section 3729(a)(1)(B), which applies to cases, such as this, that were pending on or after June 7, 2008. *Id.*

652 F.3d 818, n.2 (7th Cir. 2011).

In response to the Court's order directing the parties to provide certain supplementary briefing (Docket #38), Relator effectively acknowledges *Yannacopoulos'* teachings and clarifies that: (i) his first claim is based upon *both* 31 U.S.C. § 3729(a)(1) (for the time period from 2006 through May 19, 2009) and 31 U.S.C. § 3729(a)(1)(A) (for the time period from May 20, 2009 through the present) (Docket #39, 7-8); and (ii) his second claim is based upon *only* 31 U.S.C. § 3729(a)(1)(B) (the successor to Section 3729(a)(2)

Page 5 of 18

Case 2:12-cv-00775-JPS    Filed 11/22/13    Page 5 of 18    Document 47

applying to cases, such as this, that were pending on or after June 7, 2008) (Docket #39, 10).[4]

### 5.1.2 Claim One: Fraudulent Presentation

As a practical matter, the statutory iterations on which Relator bases his first claim—31 U.S.C. § 3729(a)(1) (for the time period from 2006 through May 19, 2009) and 31 U.S.C. § 3729(a)(1)(A) (for the time period from May 20, 2009 through the present)—generally yield the same three elements: "(1) a false or fraudulent claim; (2) which was presented or caused to be presented, by the defendant *to the United States* for payment or approval; (3) with the knowledge that the claim was false." *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740-741 (7th Cir. 2007) (citation omitted) (emphasis added) (overruled in part on other grounds by *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920 (7th Cir. 2009)).[5]

Against the backdrop of the factual allegations (and legal reasoning) detailed *supra* in Section Two and with the benefit of the teachings of *Fowler*, the Court is obliged to find that Relator's first amended complaint plausibly

---

[4] With regard to Relator's first claim, Defendants contend that only the first of these statutory iterations applies because "Relator's claims before and after the dates of his employment are supported only by speculative, 'information and belief' pleading, which fails to satisfy Rule 9(b)." (Docket #42, 9).

The Court addresses and rejects this contention below in Section 5.3.2 in the context of Defendants' broader Rule 9(b) arguments.

With regard to Relator's second claim, Defendants characterize the quoted passage from *Yannacopoulos* as dicta and urge the Court to treat it as such. The Court declines Defendants' invitation.

[5] However, a comparison of the pre- and post-amendment versions of this statutory subsection reveals that the italicized phrase in the second element—which accounts for Section 3729(a)(1)'s requirement that the presentment be "to an officer or employee of the United States Government"—does not form part of the second element for acts from May 20, 2009, through the present. 31 U.S.C. § 3729(a)(1)(A).

gives rise to an entitlement to relief under *both* 31 U.S.C. § 3729(a)(1) (for the time period from 2006 through May 19, 2009) and 31 U.S.C. § 3729(a)(1)(A) (for the time period from May 20, 2009, through the present) because of Defendants': (i) causal nexus to the false funding applications (Elements One and Two); together with (ii) knowledge of: (a) the Eligibility Requirements (by virtue of executing PPA(s) certifying future compliance with such requirements); and (b) on-going violation(s) of one or more of such requirements (collectively comprising Element Three).[6]

### 5.1.3 Claim Two: Fraudulent Use of PPA(s)

As noted *supra* in Section 5.1.1, Relator bases his second claim upon *only* 31 U.S.C. § 3729(a)(1)(B) (the successor to Section 3729(a)(2) applying to cases, such as this, that were pending on or after June 7, 2008) (Docket #39, 10); *Yannacopoulos*, 652 F.3d at n.2.

Ostensibly, the Seventh Circuit has yet to detail the elements governing a claim under Section 3729(a)(1)(B), however, *Oakland City* (see *supra* at footnote two) provides an exacting analysis based on Section 3729(a)(2).

Section 3729(a)(2) covered "anyone who 'knowingly makes, uses, or causes to be made or used, a false record or statement *to get a false or fraudulent claim paid or approved by the Government.*'" *Oakland City*, 426 F.3d at

---

[6] Defendants contend that Relator "does not plead any facts suggesting Defendants planned not to abide by the PPA when they signed it." (Docket #21, 20); *see also* (Docket #42, 14-17).

To the contrary, Relator alleges that Defendants, in executing the PPA(s), certified their future compliance with Eligibility Requirements (Docket #12, ¶ 3) notwithstanding their "actual knowledge that…their representations of adherence were and are false." (*Id.*, ¶ 8).

916 (emphasis added). Section 3729(a)(1)(B) differs only insofar as the italicized text is replaced with "material to a false or fraudulent claim."

In *Oakland City*, Judge Easterbrook reasoned as follows in addressing allegations that a university submitted a wilful falsehood in its application to establish institutional eligibility for federal subsidies under the Higher Education Act:

> The False Claims Act covers anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). The University "uses" its phase-one application (and the resulting certification of eligibility) *when* it makes (or "causes" a student to make or use) a phase-two application for payment. *No more is required under the statute.…If a false statement is integral to a causal chain leading to payment*, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork.

426 F.3d at 916 (emphasis added).

Here, Relator appears to argue that Defendants fraudulently "used"—within the meaning of § 3729(a)(1)(B)—the PPA(s) (which formed the foundation for their institutional eligibility) when Defendants made (or caused students to make or use) false funding applications because Defendants knew that the PPA(s)' certification(s) of compliance with Eligibility Requirements were not accurate. (Docket #26, 14).

With the benefit of Judge Easterbrook's lucid analysis in *Oakland City* (and finding no cogent argument in the record that *Oakland City* does not apply to Section 3729(a)(1)(B) (Section 3729(a)(2)'s successor)), the Court is obliged to find that Relator's first amended complaint plausibly gives rise to

an entitlement to relief for Defendants' fraudulent use of the PPA(s) in support of false funding applications.[7]

    5.2    Defense Two: Does Relator Allege Fraud (In Particular)?

As noted *supra* in Section Two, Relator alleges that Defendants perpetrated the following violations of Eligibility Requirements (notwithstanding Defendants' certification in PPA(s) of future compliance with *all* Eligibility Requirements): (i) "directly compensa[ting employees] based upon success in securing enrollments" in contravention of "20 U.S.C. § 1094(a)(20)" (Docket #12, ¶¶ 63-67) ("Ground One"); (ii) providing the Accrediting Council for Independent Colleges and Schools with inaccurate information—"misleading and inflated [job] placement figures and data[,]" "forg[ed]…faculty performance reviews," and grade data reflecting grade inflation—in violation of "20 U.S.C. § 1094(a)(21)" (Docket #12, ¶¶ 68-79) ("Ground Two"); (iii) "falsifying student attendance records" in violation of "20 U.S.C. §§ 1091b, 1094" (Docket #12, ¶¶ 54, 57 and 61) ("Ground Three"); (iv) "harassing students to attend class" in violation of "20 U.S.C. §§ 1091b, 1094" (Docket #12, ¶¶ 54, 58 and 61) ("Ground Four"); (v) inflating student grades to "maintain a cumulative C average" in violation of "20 U.S.C. ¶ 1091" (Docket #12, ¶¶ 36 and 48-53) ("Ground Five"); and (vi) admitting students with remedial needs into accelerated programs in violation of "20 U.S.C. § 1002" and "34 C.F.R. § 668.32(f)." (Docket #12, ¶¶ 37-46) ("Ground Six").

In their joint motion to dismiss, Defendants contend that "the conduct [Relator] complains of does not violate the [Eligibility Requirements] he

---

[7] In so finding, the Court declines to embrace the gloss Defendants cast on the Seventh Circuit's teachings in *Oakland City*. (Docket #21, 16-20); (Docket #29, 10-13).

identifies." (Docket #20, 1). Therefore, the Court will analyze each proposed category of predicate violations in turn.

### 5.2.1 Ground One: Incentive Compensation

Relator alleges that Defendants violated the incentive compensation ban codified at 20 U.S.C. § 1094(a)(20) by: (i) directly compensating their employees based upon success in securing enrollments (from 2006 through June 26, 2008) (Docket #12, ¶¶ 64-66); and (ii) *after* June 27, 2008, indirectly tying compensation "to success in securing enrollments or financial aid" through allocating bonuses based on profitability. (*Id.*, ¶¶ 65 and 67).

Defendants move to dismiss this ground from Relator's first amended complaint reasoning that Relator fails to plead facts falling outside of the applicable regulatory safe harbors.[8] In response, Relator contends that those regulatory safe harbors are affirmative defenses. (Docket #26, 17).

The Court finds that Relator's first amended complaint (Docket #12) does not explicitly anticipate this particular affirmative defense. *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (holding that "Plaintiffs here

---

[8] The Court is mindful of the teachings of the Seventh Circuit in *Leveski v. ITT Educational Services, Inc.*, 719 F.3d 818 (7th Cir. 2013):

> [T]he Department of Education eliminated the safe harbor provisions from its regulations in 2011, and its current regulations now flatly prohibit institutions receiving federal award money from adjusting the salaries of student recruiters and financial aid officers "based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid." 34 C.F.R. § 668.14(b)(22)(ii)(A) (2013).

In addition, the Court notes that subsection 668.14(b)(22)(ii)(B) permits "[p]rofit-sharing payments *so long as* such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds." (2013) (emphasis added).

chose to anticipate the § 1104(c) [affirmative] defense in their Complaint explicitly and thus put it in play."). Therefore, the Court will adhere to the general principle that "a district court should not base a dismissal under Rule 12(b)(6) on its assessment of an affirmative defense." *Id.* Relator may proceed on this ground.

### 5.2.2 Ground Two: Falsehoods Submitted to Accreditor

Relator also alleges that Defendants violated 20 U.S.C. § 1094(a)(21)—requiring eligible institutions to "meet the requirements established by the Secretary and accrediting agencies or associations"—by providing their accreditor (the Accrediting Council for Independent Colleges and Schools) with inaccurate information (*e.g.*, "misleading and inflated [job] placement figures and data[,]" "forg[ed]…faculty performance reviews," and grade data reflecting grade inflation) which, had the truth come to light, would have resulted in revocation of accreditation. (Docket #12, ¶¶ 68-79).

In response, Defendants submit that the examples quoted directly *supra* from Relator's complaint are not sufficiently specific. Fed. R. Civ. P. 9(b). Viewed against the balance of the details in Relator's complaint (in particular, ¶¶ 68-79), the Court finds that Relator's statement of Ground Two is plausible and adequately detailed for this juncture in these proceedings. (Docket #12).

### 5.2.3 Ground Three: Falsified Student Attendance Records

In pleading his third category of predicate conduct, Relator alleges that Defendants condoned reliance on "attendance cards containing forged student signatures" to "justify billing for Title IV/HEA subsidized tuition" and, in this regard, "obtained and retained Title IV/HEA funds that its students did not in fact 'earn'" within the meaning of 20 U.S.C. § 1091b(a)(3). *See* 20 U.S.C. § 1094(a)(22). (Docket #12, ¶¶ 54-57 and 61-62).

Defendants argue that "[c]ritically, Relator alleges only that the student *signatures* on the cards were 'forged[]'" and "does not allege that the cards inaccurately reflected the student's actual class attendance." (Docket #21, 24).

The Court finds that Relator's allegations in Ground Three *plausibly* give rise to an entitlement to relief because the forging of documentation foundational to billing connotes mischief which merits further exploration in the course of discovery.

### 5.2.4 Ground Four: Harassment by Retention Coordinators

Relator alleges that Defendants deployed "Retention Coordinators to make repeated, and often harassing, telephone calls to absent students, their families, friends, neighbors, and places of employment in order to get the students to show up to class" in order to "recover more Title IV/HEA subsidized tuition." (Docket #12, ¶ 58).

In response, Defendants argue that "[r]egulations do not prohibit an institution from persuading students to attend class." (Docket #21, 30). In reply, Relator concedes "that Title IV law does not prohibit an institution from encouraging student attendance." (Docket #26, 20). Therefore, the Court is obliged to find that Ground Four does not plausibly state a violation of any of the Eligibility Requirements.

### 5.2.5 Ground Five: Extraordinary Grade Inflation

According to Relator, as of December 10, 2008, Defendants "eliminated the 'D' grade from the grading system" by expanding the range of a "C" grade "to 65-79%" because "Title IV funding is only allocated to students who…maintain a cumulative C average (absent extraordinary circumstances). 20 U.S.C. § 1091." (Docket #12, ¶¶ 36 and 48).

In a supplemental brief, Relator elaborates on his legal theory by providing pertinent citations to 20 U.S.C. § 1091(c) (which, at subsection (1)(B), requires that a student "has a cumulative C average" or certain equivalents thereof) and 20 U.S.C. § 1094(a)(3) (which sets forth, as an Eligibility Requirement, that "[t]he institution will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under this subchapter….").

Defendants bemoan the belated pinpoint citations but offer no legal authority whatsoever for the proposition that such pinpoint citations (while good practice and helpful to the Court) must be set forth in the Complaint itself to comply with Fed. R. Civ. P. 8(a)(2). The Court need not detain itself on this argument: the federal rules embrace *notice* pleading, not *code* pleading. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era….").

Moreover, Defendants argue that "[b]y its plain language, the statute [—ostensibly referring to 20 U.S.C. § 1094(a)(3)—] refers to 'administrative and fiscal procedures and records' with respect to 'funds received,' and thus does not address admissions or academics." (Docket #43, 14).

The Court disagrees and finds Relator's theory plausible when 20 U.S.C. §§ 1091(c) and 1094(a)(3) are read *in pari materia*.

### 5.2.6 Ground Six: Accelerated Programs and Remedial Needs

Finally, in pleading his sixth category of predicate conduct, Relator alleges that Defendants admitted students with remedial needs into accelerated programs in violation of "20 U.S.C. § 1002" and "34 C.F.R. §

Page 13 of 18

Case 2:12-cv-00775-JPS   Filed 11/22/13   Page 13 of 18   Document 47

668.32(f)." (Docket #12, ¶¶ 37-46). Defendants argue that such conduct does not amount to a violation of Eligibility Requirements. *See* (Docket #21, 24-26).

In response, Relator clarifies, through supplemental briefing, that he theorizes that admitting students with remedial needs into accelerated programs violates 20 U.S.C. § 1094(a)(3) because (as noted *supra* in Section 5.2.5) that statutory subsection prescribes as an Eligibility Requirement that "[t]he institution will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under this subchapter….").

The Court finds Relator's theory in Ground Six is not plausible because it extrapolates too far from an already nebulous provision. In so finding, the Court notes that Relator cites no controlling case law in his briefing to support such an attenuated theory.

5.3   Defense Three: Does Relator Plead Fraud With Specificity?

Defendants additionally argue that Relator's first amended complaint "fails to plead his claims with specificity as required by Fed. R. Civ. P. 9(b)." (Docket #21, 26). In support of their third defense, Defendants offer a number of distinct grounds. Below, the Court addresses each in turn.

5.3.1   The PPA(s)

First, Defendants argue that Relator fails to plead the "who" of the alleged frauds because his factual allegations "use the collective, undifferentiated term 'Defendants' when referring to the underlying conduct that forms the basis of his FCA claim[s]. *See* Complaint ¶¶ 21-88." (Docket #21, 26). In particular, Defendants argue that "[i]f a Defendant did not sign the PPA, then, under Relator's own theory, that Defendant is not liable under the FCA." (Docket #21, 28). That proposition is logical.

Page 14 of 18

Case 2:12-cv-00775-JPS   Filed 11/22/13   Page 14 of 18   Document 47

Here, Relator alleges that Defendants entered into "PPA(s)" with the federal government which certify Defendants' future compliance with, *inter alia*, Eligibility Requirements. (Docket #12, ¶ 3).

As the Seventh Circuit teaches in *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999):

> The purpose (the defensible purpose, anyway) of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual), *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1418 (3d Cir.1997); *Norman v. Apache Corp.*, 19 F.3d 1017, 1022 (5th Cir.1994); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972); *cf. Addington v. Texas*, 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); because fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it, *cf. Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978) (Friendly, J.) ("fraud by hindsight"); Katz v. Household Int'l, Inc., 91 F.3d 1036, 1039 (7th Cir.1996); *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir.1990); and because charges of fraud (and also mistake, the other charge that Rule 9(b) requires be pleaded with particularity) frequently ask courts in effect to rewrite the parties' contract or otherwise disrupt established relationships. *See, e.g., Stearns v. Page*, 48 U.S. (7 How.) 819, 828–30, 12 L.Ed. 928 (1849). By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate.

Here, there is conspicuous dissonance between Relator's allegation that *each* of the defendants signed one or more PPA(s) and the statutory provision on which his claims of Fraudulent Presentation (*see supra* at Section

5.1.2) and Fraudulent Use (*see supra* at Section 5.1.3) are predicated: 20 U.S.C. § 1094. (Docket #12, ¶ 24). Section 1094(a) provides that "an institution…shall …enter into a program participation agreement with the Secretary" "[i]n order to be an eligible institution." Notably, nothing in Section 1094(a) requires an operating company's corporate parent(s) to serve as counterpart(ies).

Relator alleges that he worked "at Sanford-Brown College in Milwaukee, Wisconsin" and suggests legitimate confusion as to which legal entit(ies) *operated* (in contrast to merely having ownership of) that institution during the time period alleged. In particular, he alleges that "[f]rom April 2005 through Approximately December 2011, employees of [Sanford-Brown College in Milwaukee, Wisconsin,] received paychecks from Ultrasound Technical Services, Inc.," however that entity "became inactive in January 2012" and so "[o]n information and belief, current employees receive paychecks from Sanford-Brown, Limited."

Against the plain language of Section 1094(a), these allegations (and reasons provided therefor) are sufficiently detailed to give rise to a plausible inference that defendants Ultrasound Technical Services, Inc., and Sanford-Brown, Limited are the government's counterparty in one or more PPA(s).

In contrast, nothing more than a bald assertion that defendant Career Education Corporation is part of an "integrated enterprise" (by virtue of ownership of defendant Sanford-Brown, Limited) supports Relator's allegation that Career Education Corporation is a counterparty to a PPA. That bald assertion contradicts the plain language of Section 1094(a)—contemplating only *the institution* signing the PPA (in contrast to one or more corporate parents)—and so fails to satisfy Fed. R. Civ. P. 9(b). With the benefit of the foregoing analysis, the Court is obliged to find that there is not

sufficient factual detail in the complaint to implicate defendant Career Education Corporation as a counterparty to the PPA(s) which serve as the lynchpin(s) to Relator's claims. Therefore, the Court is obliged to and will dismiss Career Education Corporation from this action.

### 5.3.2    Information and Belief

Defendants argue that "Relator's claims before and after the dates of his employment are supported only by speculative, 'information and belief' pleading, which fails to satisfy Rule 9(b)." (Docket #42, 9).

"The general rule that fraud cannot be pled based on information and belief is not ironclad, however: the practice is permissible so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011)). However, "[t]he grounds for the plaintiff's suspicions must make the allegations *plausible*, even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Id.* (Citations omitted) (emphasis in original).

Here, Relator extrapolates from detailed allegations about what transpired during his tenure as an employee to allege "on information and belief" that these activities pre-dated his hiring and survived his departure.

Against the backdrop of all of Relator's detailed allegations (Docket #12) and with the benefit of the teachings of *Pirelli,* the Court finds that the timeframe Relator alleges in his complaint is *plausible*.

### 5.3.3    Details to Support Legal Theories

Finally, Defendants argue that Relator's first amended complaint, in various regards, fails to support his claims with sufficient factual detail to satisfy Fed. R. Civ. P. 9(b). (Docket #21, 29-35). Against the backdrop of the

analysis *supra* in this order, the Court is obliged to find that Relator has carried his burden.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss (Docket #20) be and the same is hereby GRANTED in part in accordance with the analyses set forth in Sections 5.2.4, 5.2.6 and 5.3.1 and DENIED in part in all other respects; and

IT IS FURTHER ORDERED that defendant Career Education Corporation be and the same is hereby DISMISSED from this case.

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge