# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>and<br><br>BRENT M. NELSON,<br><br>Relator,<br>v.<br><br>SANFORD-BROWN, LIMITED, and ULTRASOUND TECHNICAL SERVICES, INC.,<br><br>Defendants. | Case No. 12-CV-775-JPS<br><br><br><br>ORDER |

1. BACKGROUND

Brent M. Nelson, the relator in this *qui tam* action filed under the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"), brings claims against defendants Sanford-Brown, Limited, and Ultrasound Technical Services, Inc. (together, "Defendants") for allegedly fraudulent conduct that resulted in the submission of allegedly false claims for federal subsidies under the Higher Education Act. (Docket #12).[1]

Before the Court is Defendants' motion to dismiss Relator's first amended complaint for lack of subject matter jurisdiction. (Docket #49).[2]

---

[1] Defendants' parent company, Career Education Corporation, was dismissed from this action. (Docket #47); (Docket #75).

The United States elected not to intervene in this lawsuit. (Docket #9); 31 U.S.C. § 3730(b)(4)(B).

[2] On November 22, 2013, the Court granted in part and denied in part Defendants' motion to dismiss Relator's first amended complaint for failure to state a claim upon which relief can be granted. (Docket #47).

2. RELATOR'S FIRST AMENDED COMPLAINT

Below, the Court briefly summarizes the factual allegations and legal claims set forth in Relator's first amended complaint. (Docket #12).

In order to obtain certification of eligibility to participate in programs for federal subsidies under the Higher Education Act, Defendants entered into Program Participation Agreement(s) ("PPA(s)") with the federal government certifying Defendants' future compliance with, *inter alia*, "the statutes and regulations for institutional eligibility…." ("Eligibility Requirements") (*Id.* at ¶ 3). However, Defendants did so notwithstanding their "actual knowledge that…their representations of adherence were and are false…." (*Id.* at ¶ 8).

In particular, Defendants perpetrated the following violations of Eligibility Requirements: (i) "directly compensa[ting employees] based upon success in securing enrollments" in contravention of the incentive compensation restrictions codified at "20 U.S.C. § 1094(a)(20)" (*Id.* at ¶¶ 63-67); (ii) providing the Accrediting Council for Independent Colleges and Schools with inaccurate information—"misleading and inflated [job] placement figures and data," "forg[ed]…faculty performance reviews," and grade data reflecting grade inflation—in violation of "20 U.S.C. § 1094(a)(21)" (*Id.* at ¶¶ 68-79); (iii) "falsifying student attendance records" in violation of "20 U.S.C. §§ 1091b, 1094" (*Id.* at ¶¶ 54, 57 and 61); and (iv) inflating student grades to "maintain a cumulative C average" in violation of "20 U.S.C. ¶ 1091" (*Id.* at ¶¶ 36 and 48-53).

Moreover, "[d]uring the 2008-2009 school year, and upon information and belief, from 2006 to the present, Defendants submitted or caused to be

submitted false claims and/or applications for Title IV/HEA funding." (*Id.* at ¶ 32).[3]

These false claims are actionable under § 3729(a)(1) because of Defendants': (i) causal nexus to the false funding applications; together with (ii) knowledge of: (a) the Eligibility Requirements (by virtue of executing PPA(s) certifying future compliance with such requirements); and (b) on-going violation(s) of one or more of such requirements.

In addition, Defendants fraudulently "used"—within the meaning of § 3729(a)(2)—the PPA(s) (which formed the foundation for their institutional eligibility) when Defendants made (or caused students to make or use) false funding applications because Defendants knew that the PPA(s)' certification(s) of compliance with Eligibility Requirements were not accurate.[4]

3. DEFENDANTS' SECOND MOTION TO DISMISS

Defendants' motion to dismiss Relator's first amended complaint for lack of subject matter jurisdiction argues that: (i) Relator's entire case should be dismissed under the jurisdictional bar set forth in 31 U.S.C. § 3730(e)(4)

---

[3] Relator appears to reason that the funding applications were false because the student represented that he or she was enrolled at an eligible institution when, (usually) unbeknownst to the student, the eligibility upon which the application was predicated had been destroyed by the Defendants' noncompliance with one or more Eligibility Requirements. (Docket #26 at 11); *See generally, U.S. ex rel. Main v. Oakland City University*, 426 F.3d 914, 916 (7th Cir. 2005).

With regard to the time period alleged, Relator appears to extrapolate from his stint of employment "as the Director of Education/Chief Education Officer at Sanford-Brown College in Milwaukee, Wisconsin…from roughly June 2008 until January 2009." (Docket #12, ¶ 16).

[4] Relator appears to rely on the teachings of the Seventh Circuit in *U.S. ex rel. Main v. Oakland City University*, 426 F.3d 914, 916 (7th Cir. 2005). (Docket #26 at 14).

because Relator's allegations are based upon publicly disclosed allegations and he lacks direct and independent knowledge of the information on which his allegations are based (rendering him ineligible for the so-called "original source" exception to the prior public disclosure bar to suit); and (ii) Relator's claims predicated upon alleged violations of the incentive compensation ban set forth in 20 U.S.C. § 1094(a)(20) should be dismissed under the FCA's first-to-file rule, codified at 31 U.S.C. § 3730(b)(5). (Docket #49).

In Section Four below, the Court addresses these arguments in turn.

4. DISCUSSION

    4.1   Does the Public Disclosure Rule Bar Relator's Claims?

        4.1.1   Relevant Statutory Iterations

As noted *supra* in Section Two, Relator's first amended complaint brings claims for the period from 2006 to the present. (Docket #12, ¶ 32).

Effective March 23, 2010, the statutory subsection in the FCA embodying the prior public disclosure rule—31 U.S.C. § 3730(e)(4)—was amended without any clear manifestation of Congressional intent that the changes be applied retroactively. *Graham County Soil and Water Conversation Dist. v. U.S. ex rel. Wilson*, 130 S.Ct. 1396, 1400 n. 1 (2010); *see also Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 117 S.Ct. 1871, 1876 (1997) and *U.S. ex rel. Goldberg v. Rush University Medical Center*, 680 F.3d 933, 934 (7th Cir. 2012). Therefore, the legal effect of conduct is assessed under the law that existed when the conduct took place. *Hughes*, 117 S.Ct. at 1876; *Goldberg*, 680 F.3d at 934.

Accordingly, on the face of Relator's complaint, it would appear that both the version of § 3730(e)(4) in effect prior to the March 2010 amendment ("Pre-Amendment Public Disclosure Rule"), and its successor ("Post-Amendment Public Disclosure Rule"), are pertinent to this case because

Relator claims that Defendants' alleged fraudulent conduct spanned from 2006 to the present.[5]

### 4.1.2 Pre-Amendment Public Disclosure Rule

The Pre-Amendment Public Disclosure Rule provided that:

> "No court shall have jurisdiction over an [FCA] action…based upon the public disclosure of allegations or transactions [1] in a criminal, civil, or administrative hearing, [2] in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or [3] from the news media, unless…the person bringing the action is an original source of the information." § 3730(e)(4)(A) [].

*Graham County*, 130 S.Ct. at 1401; Pub. L. No. 99–562, § 3, 100 Stat. 3153 (1986).

> A separate statutory provision define[d] an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

*Id.*

> Congress added this [rule] to the FCA in order to avoid the "risk that unnecessary 'me too' private litigation would divert funds from the Treasury." [*United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d, 934 (7th Cir. 2012)]. With this congressional purpose in mind, [the Seventh Circuit has] previously interpreted the phrase "based upon [a] public disclosure" to mean "substantially similar to publicly disclosed allegations," in accordance with virtually every other circuit that has interpreted this phrase. [*Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920 (7th Cir. 2009).]

*Leveski*, 719 F.3d at 828.

---

[5] The Pre-Amendment Public Disclosure Rule "remained effective from October 27, 1986 until March 22, 2010." *Leveski v. ITT Educational Services, Inc.*, 719 F.3d 818, 828 (7th Cir. 2013).

### 4.1.2.1 Allegations "Based Upon" Public Disclosure?

Accordingly, the Court's jurisdictional inquiry in this case begins with a determination of whether Relator's allegations are substantially similar to publicly disclosed allegations. *Id.* To answer that question, the Court "at this stage [asks] whether [Relator's] allegations 'rest on genuinely new and material information.'" *Leveski*, 719 F.3d at 835 (citing to *Goldberg*, 680 F.3d at 936).[6]

Here, Relator makes an extraordinarily consequential concession at the outset of his brief opposing Defendants' motion:

---

[6] In *Leveski*, the defendant's motion to dismiss the relator's second amended complaint argued that the relator's deposition testimony demonstrated that she "'lacks direct knowledge of the fundamental premise of her suit… and what minimal knowledge she does have was not acquired independently….'" 719 F.3d at 826.

On appeal, the Seventh Circuit explained a practical implication of the form of the defendant's challenge to subject matter jurisdiction:

> [B]ecause [the defendant] raised a factual (instead of a facial) challenge to jurisdiction, we are "not bound to accept as true the allegations of the complaint which tend to establish jurisdiction." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979). Instead, we may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue"—such as Leveski's deposition testimony. *Id.*; *see also Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002).

*Id.* at 828.

In the present case, Defendants mount a factual (instead of facial) challenge to subject matter jurisdiction insofar as they cite sporadically to various portions of Relator's deposition testimony to support their contentions that: (i) "Relator cannot have direct and independent knowledge of things that occurred before and after his employment and at other campuses;" and (ii) "Relator lacks any direct and independent knowledge of conduct that allegedly occurred during his employment." (Docket #50, p. 10 *et seq.*). Therefore, this Court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue. *Leveski*, 719 F.3d at 828.

> In support of their Motion to Dismiss, Defendants attach more than one hundred exhibits that they claim demonstrate that Nelson's allegations have been publically disclosed. For purposes of this motion only, Nelson *concedes that his allegations have been "publically disclosed" pursuant to 31 U.S.C. § 3730(e)(4)*[].

(Docket #56, 9-10) (emphasis added). Significantly, Relator excludes from his concession only *one* of the "more than one hundred exhibits" that Defendants filed. (Docket #56, 10 n.5). This lapse by Relator matters because: (i) "[a]t each stage of the jurisdictional analysis, the plaintiff bears the burden of proof," *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) (a *qui tam* case parsing § 3730(e)(4)); (ii) Relator concedes that his arguments regarding whether his allegations *rest on genuinely new and material information*—which, under *Leveski*, is "[a]ll we care about at this stage" 719 F.3d at 835—account for "only those disclosures specifically addressed in the body of Defendants' memorandum in support of their Motion" "[b]ecause it is not possible to compare every single disclosure in the 30-page limit proscribed by the Court" (Docket #56, 12 n.6); and (iii) Relator does not appear (or claim) to have requested leave to file an oversized brief pursuant to Civil Local Rule 56(b)(8)(B).

With the benefit of the foregoing analysis, the Court is obliged to find that Relator failed to carry his burden of showing that his allegations are not "based upon" the "more than one hundred exhibits" Relator acknowledges in conceding that *"his allegations have been 'publically disclosed' pursuant to 31 U.S.C. § 3730(e)(4)*[]." (Docket #56, 9-10) (emphasis added).

#### 4.1.2.2 "Original Source" of Allegations?

Accordingly, the Court proceeds to step two of the jurisdictional analysis under the pre-amendment version of § 3730(e)(4): the "original

source" exception to the public disclosure bar to suit. "Recall that [Relator] may litigate [his] case on the merits—even if [his] allegations are based upon a prior public disclosure—as long as [he] has 'direct and independent knowledge of the information on which [his] allegations are based.' 31 U.S.C. § 3730(e)(4)(B)." *Leveski*, 719 F.3d at 836.[7]

As explained *supra* in Section Two, Relator alleges four separate categories of Eligibility Requirement violations (in other words, four distinct categories of predicate violations offered to support the FCA claims Relator brings in this suit): (i) "directly compensa[ting employees] based upon success in securing enrollments" in contravention of "20 U.S.C. § 1094(a)(20)" (Docket #12 at ¶¶ 63-67); (ii) providing the Accrediting Council for Independent Colleges and Schools with inaccurate information— "misleading and inflated [job] placement figures and data," "forg[ed]…faculty performance reviews," and grade data reflecting grade inflation—in violation of "20 U.S.C. § 1094(a)(21)" (*Id.* at ¶¶ 68-79); (iii) "falsifying student attendance records" in violation of "20 U.S.C. §§ 1091b, 1094" (*Id.* at ¶¶ 54, 57 and 61); and (iv) inflating student grades to "maintain a cumulative C average" in violation of "20 U.S.C. ¶ 1091" (*Id.* at ¶¶ 36 and 48–53).[8]

Each of these four categories of alleged predicate conduct will be addressed in turn, but first the Court must address two additional sweeping

---

[7] The second prong of the "original source" analysis—voluntary disclosure to the Government *before filing suit*—was not at issue in *Leveski*. *See infra,* Section 4.1.2.2.5.

[8] In its order on Defendants' first motion to dismiss, the Court found these theories to be *plausible*. (Docket #47).

concessions Relator buries in footnotes in his opposition brief: (i) "Relator concede[s] that he does not have direct and independent knowledge of the allegations and transactions at [campuses other than Sanford-Brown College Milwaukee]" (Docket #56 at 25 n.32); and (ii) "Relator concedes that he does not have direct and independent knowledge of the allegations plead upon information and belief" (*Id.* at n.33). Given that Relator's lynchpin allegation in this case—that "Defendants submitted or caused to be submitted false claims and/or applications for Title IV/HEA funding"—is based only on "information and belief" for the period other than "the 2008-2009 school year" (which, for Relator, ended when he left his position in "January 2009") (Docket #12, ¶¶ 16 and 32), the Court is obliged to find that its subject matter jurisdiction is circumscribed accordingly (both as to time and location) under § 3730(e)(4). Therefore, the baseline for the balance of the Court's subject matter jurisdiction analysis is limited to Sanford-Brown College Milwaukee for the period of time running from the start of the 2008 academic school year at that institution to the date Relator departed his position in January 2009.

####### 4.1.2.2.1 Incentive Compensation

To substantiate his allegation that Defendants were "directly compensa[ting employees] based upon success in securing enrollments" (Docket #12 at ¶¶ 63-67) in contravention of then-applicable limitations on incentive compensation, Relator cites to his deposition testimony alleging that: (i) he participated in the 2008 Career Education Corporation Management Bonus Program (Docket #43-4, 420:2–420:17); (ii) the letter announcing that program contained bolded language warning, in relevant part, that "[t]he individual performance element is no longer dependent upon the achievement of financial targets" (*Id.* at 422:14–422:19); and (iii)

notwithstanding this bolded disclaimer, Steve Guell, Relator's "boss" at Sanford-Brown College Milwaukee, gave PowerPoint presentations in which Mr. Guell said, "'If our student population is this, this is how much everyone is going to make. And if our student population is this, this is how much everyone is going to make.'" (*Id.* at 10:7–10:9 and 183:3–183:23).

The Court finds that this testimony adequately demonstrates that Relator has direct and independent knowledge of the information on which his incentive compensation allegations are based.

### 4.1.2.2.2 Reporting to ACICS

To substantiate his allegations that Defendants were "providing the Accrediting Council for Independent Colleges and Schools [(ACICS)] with inaccurate information—"misleading and inflated [job] placement figures and data," "forg[ed]…faculty performance reviews," and grade data reflecting grade inflation (*Id.* at ¶¶ 68-79), Relator cites to his deposition testimony alleging that: (i) students reported to him being placed in jobs outside of their field of study (*Id.* at 122:10–123:1) and "there were times when the student services unit would acknowledge" such mis-placements (*Id.* at 129:6–129:17); (ii) in anticipation of an ACICS site visit for re-accreditation, Relator personally witnessed the Criminal Justice Department Chair, Mark Szolgya, forging faculty performance reviews (*Id.* at 467:23–470:1); and (iii) he surmised that these issues were reported inaccurately to ACICS (*Id.* at 455:5–456:20). (Docket #56 at 22–23).

The Court finds that this testimony adequately (but barely) demonstrates that Relator has direct and independent knowledge of the information on which his ACICS allegations (with the exception of grade

inflation reporting) is based. Therefore, the Court's subject matter jurisdiction is further circumscribed accordingly.

#### 4.1.2.2.3 Student Attendance Records

To substantiate his allegation that Defendants were "falsifying student attendance records" (Docket #12 at ¶¶ 54, 57 and 61), Realtor cites to his deposition testimony alleging that he personally recalls instances where students' withdrawal dates were calculated under the applicable Title IV formula incorrectly. (Docket #43-4, 397:4–397:11 and 402:4–404:2).

The Court finds that this testimony adequately demonstrates that Relator has direct and independent knowledge of the information on which his attendance records allegations are based.

#### 4.1.2.2.4 Grade Inflation

To substantiate his allegation that Defendants were inflating student grades to "maintain a cumulative C average" in order to enhance student retention (Docket #12 at ¶¶ 36 and 48–53), Relator cites to his deposition testimony alleging that he personally received an administrative memorandum providing for elimination of the "D" grade in certain courses of study. (Docket #43-4, 349:18–356:11).

The Court finds that this testimony adequately demonstrates that Relator has direct and independent knowledge of the information on which his grade inflation allegations are based.

#### 4.1.2.2.5 Provided Information *Before Filing*?

Recall that an "original source" is defined as "an individual who has direct and independent knowledge of the information on which the allegations are based *and has voluntarily provided the information to the*

*Government before filing an action under this section which is based on the information.*" 31 U.S.C. § 3730(e)(4)(B) (emphasis added); *supra* Section 4.1.2.

Although Defendants do not invoke the italicized language in their briefing (Docket #50 and #56), the Court is mindful that "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. 1197, 1202 (2011) (citation omitted).

Here, Relator filed his *initial* complaint (Docket #1) in camera and under seal pursuant to 31 U.S.C. § 3730(b)(2). (Docket #1, #2, and #7). Although those precautionary measures satisfy the strictures of Section 3730(b)(2), the plain language of Section 3730(e)(4)(B) requires prospective relators to voluntarily disclose to the Government the information on which a planned *qui tam* suit would be based *before filing* such suit. *U.S. v. Bank of Farmington*, 166 F.3d 853, 866 (7th Cir. 1999), *overruled in part on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009).[9]

---

9     [I]t is clear that the requirement [in Section 3730(e)(4)(B)] is not satisfied by informing the government at the time of filing the action, even in compliance with the requirement that a private plaintiff must provide the government, at the time of filing, with "a copy of the complaint and written disclosure of substantially all material evidence and information the person possesses…. " [] § 3730(b)(2). More must be done to qualify as an original source than to file the action. The government must be voluntarily notified beforehand.

*Bank of Farmington*, 166 F.3d at 866 (citation omitted).

With the benefit of the foregoing analysis, the Court will direct Relator to file detailed evidence to establish compliance with the "voluntary disclosure" requirement of Section 3730(e)(4)(B). In the absence of sufficient proof, the Court will be obliged to dismiss this case for want of jurisdiction.

### 4.1.3  Post-Amendment Public Disclosure Rule

As discussed in Section 4.1.2.2 *supra*, Relator's concessions with regard to his allegations based on "information and belief" function to truncate the Court's subject matter jurisdiction down to a period of time ending in January 2009. Therefore, the Post-Amendment Public Disclosure Rule (which took effect on March 23, 2010) ultimately bears no relevance to this case.

### 4.2  Does the First-to-File Jurisdictional Bar Apply?

Defendants contend that Relator's claims predicated upon alleged violations of the incentive compensation ban set forth in 20 U.S.C. § 1094(a)(20) should be dismissed under the FCA's first-to-file rule, codified at 31 U.S.C. § 3730(b)(5), in light of the complaint filed in *U.S. ex rel. Powell et al. v. Am. Intercontinental Univ., Inc. et al.*, 756 F.Supp.2d 1374 (N.D. Georgia 2010) (No. 08-2277). (Docket #49); (Docket #50, 37–38); (Docket #51-33).

Section 3730(b)(5) provides: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."

The Seventh Circuit "read[s] 'related action based on the facts underlying the pending action' *to specify only the materially similar situations that objectively reasonable readings of the original complaint, or investigations launched in direct consequence of that complaint, would have revealed….*" *U.S. ex rel. Chovanec v. Apria Healthcare Group Inc.*, 606 F.3d 361, 365 (7th Cir. 2010). (emphasis added).

With the benefit of the Seventh Circuit's teachings in *Chovanec*, the Court turns to the complaint in *Powell*. (Docket #51-33). The relators in *Powell*, each a current or former employee of the Dunwoody, Georgia, campus of American Intercontinental University, Inc. ("AIU"), filed a *qui tam* suit under the FCA against AIU and its corporate parent, Career Education Corporation, alleging that, as of mid-2008, AIU "compensate[d] enrollment counselors based directly on their recruiting activities (enrollments, telephone calls, generation of leads, appointments, etc.)" (*Id.* at ¶¶ 4–7, 22, 23 and 53). In addition, the *Powell* relators alleged (on information and belief) that: (i) "CEC exercises complete dominion and control over each and all of its subsidiaries[;]" and (ii) "CEC develops and overseas the implementation of all policies and procedures *at [d]efendant AIU*" such that the two entities "acted as alter egos of each other." (*Id.* at ¶¶ 13 and 14) (emphasis added).

Here, by contrast, Relator alleges that: (i) he participated in the 2008 Career Education Corporation *Management* Bonus Program (Docket #43-4, 420:2–420:17) (emphasis added); (ii) the letter announcing that program contained bolded language warning, in relevant part, that "[t]he individual performance element is no longer dependent upon the achievement of financial targets" (*Id.* at 422:14–422:19); and (iii) notwithstanding this bolded disclaimer, Steve Guell, Relator's "boss" at Sanford-Brown College Milwaukee, allegedly gave PowerPoint presentations in which Mr. Guell said, "'If our student population is this, this is how much everyone is going to make. And if our student population is this, this is how much everyone is going to make.'" (*Id.* at 10:7–10:9 and 183:3–183:23).

Against that backdrop, this Court is unable to find that an objectively reasonable reading of the complaint in *Powell* (or investigations launched in

direct consequence of that complaint) would have revealed the machinations Relator alleges transpired at Sanford-Brown College Milwaukee. Regardless, the incentive compensation schemes alleged in *Powell* and the instant case are not "materially similar situations" because, *inter alia*: (i) they involve geographically disparate campuses of two different subsidiaries within Career Education Corporation's corporate family structure; and (ii) the scheme in *Powell* was alleged to take the form of unabashed "incentive trips, awards, and gifts" (such as "an all expense paid trip to Miami, Florida") given to *enrollment counselors* (Docket #51-33, ¶¶ 22–23), whereas Relator in this case alleges corporate double-speak as to how *management* was compensated.

With the benefit of the foregoing analysis, the Court is obliged to find that the FCA's first-to-file rule does not bar Relator's claims predicated upon alleged violations of the incentive compensation ban at Sanford-Brown College Milwaukee.

5. CONCLUSION

Even if Relator files evidence sufficient to prove compliance with the "voluntary disclosure" requirement of the "original source" exception to the Pre-Amendment Public Disclosure Rule (discussed *supra* in Section 4.1.2.2.5), the Court's subject matter jurisdiction would be limited to Relator's FCA claims concerning Sanford-Brown College Milwaukee for the period of time running from the start of the 2008 academic school year at that institution until the date Relator departed his position in January 2009. *See supra* Section 4.1.2.2.[10]

---

[10] Subject matter jurisdiction over Relator's claims is pared back slightly further in accordance with the analysis set forth above in Section 4.1.2.2.2.

As this case stands (if at all) a shadow of its former self, the Court reminds counsel that nearly a year ago, on June 13, 2013, the parties were asked to "sit down and have a meaningful conversation about the justiciability of the contentions in this case, whether they be claims, or defenses, and put in place a meaningful complaint and answer" "[b]ecause the clock is ticking with regard to discovery." (Docket #32 at 4). Notably, the motion before the Court was not filed until the end of November 2013 (Docket #49) despite the Court's warning *over five months before* that jurisdictional issues "are matters that frank and open discussions between counsel can save everybody an awful lot of time, expense, frustration, and at the end a lot of heartache." (Docket #32 at 7).

With the benefit of this order, the parties will be directed to file a single, joint letter with the Court not later than Wednesday, March 26, 2014, indicating whether the parties seek adjudication of the pending motion for summary judgment. (Docket #60).

The dates in the Court's trial scheduling order (Docket #24) remain intact.

Accordingly,

IT IS ORDERED that Defendants' motion to dismiss Relator's first amended complaint for lack of subject matter jurisdiction (Docket #49) be and the same is hereby GRANTED in part in accordance with the analysis set forth in Section 4.1, and DENIED in part in all other respects;

IT IS FURTHER ORDERED that, not later than Wednesday, March 19, 2014, Relator shall file detailed evidence to establish compliance with the "voluntary disclosure" requirement of Section 3730(e)(4)(B); and

IT IS FURTHER ORDERED that, not later than Wednesday, March 26, 2014, the parties shall file a single, joint letter with the Court indicating whether they seek adjudication of the pending motion for summary judgment (Docket #60).

Dated at Milwaukee, Wisconsin, this 17th day of March, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge