UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> BRENT M. NELSON, <br><br> Relator, <br> v. <br><br> SANFORD-BROWN, LIMITED, and ULTRASOUND TECHNICAL SERVICES, INC., <br><br> Defendants. | Case No. 12-CV-775-JPS <br><br><br><br><br><br> ORDER |

There has been a flurry of activity in this case during the last week, after the Court partially granted Defendants' motion to dismiss Relator's *qui tam* complaint on jurisdictional grounds. (*See* Docket #107–#121). In its order, the Court dismissed all but a handful of Relator's claims, and left even those remaining claims on uncertain footing. (*See* Docket #107 at 6–7, 13). The Court twice ordered further submissions from the parties to clear up the state of those remaining claims. (*See* Docket #107, #110). The parties submitted all of the documentation requested, and the Court will now rule upon those remaining claims.

1. BACKGROUND

The relevant background extends back to the Court's March 17, 2014 order on Defendant's motion to dismiss Relator's amended complaint. In that order, the Court held that it may lack jurisdiction to hear this case. (Docket #107) To resolve that issue, the Court requested that Relator file additional documentation. (Docket #107). Relator did so, but his submissions did not

fully address the issue, so the Court requested further briefing from the parties on the matter. (Docket #108, #109, #110). The Court is in receipt of the parties' briefs, and will now decide the issue, after first providing more detailed background information.

### 1.1 Order on Defendant's Motion to Dismiss

The Court begins by briefly describing its order on Defendants' motion to dismiss, which left open a jurisdictional issue pertaining to a number of claims, and which still remains for the Court to address in this order.

Defendants moved to dismiss Relator's first amended complaint on November 27, 2013. (Docket #49). They argued that the False Claims Act's jurisdictional bar, 31 U.S.C. § 3730(e)(4)(A),[1] applies to Relator's claims, thus stripping the Court of jurisdiction. (Docket #50 at 21–28).

31 U.S.C. § 3730(e)(4)(A) deprives courts of jurisdiction over *qui tam* actions in which relators' allegations are "based upon" various forms of "public disclosure[s]." For example, a relator cannot base his complaint upon

---

[1] As the Court noted in its order on Defendants' motion to dismiss, Congress modified the *qui tam* statute, including the jurisdictional bar's language, on March 23, 2010, without manifesting clear Congressional intent to apply the changes retroactively; therefore, the pre-amendment jurisdictional bar applies to all of Relator's pre-March 23, 2010, claims. (Docket #107 at 4 (citing *Graham County Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 130 S.Ct. 1396, 1400 n.1 (2010); *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 117 S.Ct. 1871, 1876 (1997); and *U.S. ex rel. Goldberg v. Rush University Medical Center*, 680 F.3d 933, 934 (7th Cir. 2012))). As the Court will discuss further, in its prior order the Court dismissed all of Relator's claims except for those arising from the beginning of the 2008 school year until Relator left his position in January of 2009. (*See* Docket #107 at 9, 13). Accordingly, only the 2008–2009 claims remain, meaning that the Court need only apply the pre-amendment jurisdictional bar. Therefore, unless otherwise noted in the body of this order, any references to 31 U.S.C. § 3730 and the jurisdictional bar are meant to refer to the pre-amendment version of the statute.

information that was previously publicly disclosed in: other court proceedings; congressional or administrative reports, hearings, audits, or investigations; or in news media reports. 31 U.S.C. § 3730(e)(4)(A).

In their motion to dismiss, Defendants identified vast swathes of such materials, which they asserted constitute public disclosures that should deprive the Court of jurisdiction under 31 U.S.C. § 3730(e)(4)(A). (Docket #50 at 22–25; *see* Docket #50 at 4–20 (cataloging various instances of alleged public disclosure)). They argued that Relator's allegations are all based upon various news reports, lawsuits, and government investigations, which pre-dated Relator's filing of his complaint. (Docket #50 at 22–25; *see* Docket #50 at 4–20).

Relator made a significant misstep in response. Rather than address each of the pieces of alleged public disclosure, he simply stated that he "concedes that his allegations have been 'publically disclosed' pursuant to 31 U.S.C. § 3730(e)(4)[]." (Docket #56 at 9–10). Given that Relator bears the burden of proof in the jurisdictional analysis, *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009), this was a significant admission: it compelled the Court to find that 31 U.S.C. § 3730(e)(4)(A)'s jurisdictional bar applies to the allegations in his complaint. (Docket #107 at 7). In other words, because Relator conceded that his allegations had already been publicly disclosed, he essentially admitted that the jurisdictional bar applies to his claims, stripping the Court's jurisdiction to hear them.

The Court, however, identified a potential escape-hatch for Relator: the "original source" exception to the public disclosure bar. (Docket #107 at 7–8 (quoting *Leveski v. ITT Educational Services, Inc.*, 719 F.3d 818, 828 (7th Cir. 2013) (itself discussing the original source exception and the definition of an original source discussed in 31 U.S.C. § 3730(e)(4)(B)))). 31 U.S.C.

§ 3730(e)(4)(A)'s jurisdictional bar applies "unless…the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(B) goes on to define an original source as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." Thus, the Court may not be barred from hearing Relator's claims *if* Relator has: (1) direct and independent knowledge of the information he based his allegations on; and (2) he voluntarily provided that information to the Government before filing this action. *See* 31 U.S.C. §§ 3730(e)(4)(A), (B).

Therefore, the Court moved on to evaluate Relator's claims to determine whether they qualified for the original source exception, such that the Court could exercise jurisdiction over the claims. (Docket #107 at 8–13). As mentioned in footnote 1, *supra*, the Court began its evaluation by first holding that it must dismiss all of Relator's claims that were based upon "information and belief." (Docket #107 at 8–9). Relator "concede[d] that he does not have direct and independent knowledge of the allegations plead upon information and belief," meaning that those claims could not possibly qualify for the original source exception. (Docket #107 at 8–9). This substantially whittled down Relator's claims. The only claims that Relator had *not* based on information and belief were those that arose during the 2008–2009 school year. (Docket #107, 8–9 (citing Docket #56, 25 nn. 32, 33; Docket #12, ¶¶ 16, 32)). And, seeing as Relator left his position in January of 2009, he could have direct and independent knowledge only from the beginning of the 2008 school year until his departure in January of 2009. (Docket #107 at 9 (citing Docket #12, ¶¶ 16, 32)). Therefore, Relator having conceded that all claims based on information and belief could not satisfy the

original source exception's first requirement, the Court was obliged to dismiss all such claims. Specifically, the Court dismissed Relator's claims that covered the time period either: (1) prior to the beginning of the 2008 school year; or (2) after his departure in January of 2009. (*See* Docket #107 at 9, 13).

The Court continued its original source analysis by examining the remaining claims to determine whether Relator had the requisite direct and independent knowledge of them to satisfy the first original source requirement. (Docket #107 at 9–11). The claims are all based upon predicate conduct that falls into one of four categories: (1) direct compensation of employees (Docket #12, ¶¶ 63–67); (2) providing accrediting authorities with inaccurate information (Docket #12, ¶¶ 68–79); (3) falsifying student attendance records (Docket #12, ¶¶ 54, 57, 61); and (4) inflating student grades (Docket #12, ¶¶ 36, 48–53). With one minor exception,[2] the Court found that Relator has direct and independent knowledge of each of his claims in satisfaction of the original source exception's first requirement. (Docket #107 at 9–11).

The Court was less certain about Relator's satisfaction of the second requirement, though. To satisfy the second requirement, Relator must have voluntarily provided the information on which his claims are based to the Government before filing this action. *See* 31 U.S.C. § 3730(e)(4)(B). The parties did not brief this issue, and Relator did not provide any evidence that he had disclosed the information to the Government prior to filing, as required. (Docket #107 at 12–13).

---

[2]With regard to reporting to accrediting agencies, the Court noted that its jurisdiction was circumscribed insofar as Relator made claim regarding grade inflation reporting, because he lacked direct and independent knowledge of that aspect of his reporting claim.

Therefore, the Court directed Relator to file detailed evidence to establish his compliance with the voluntary disclosure requirement of Section 3730(e)(4)(B).³ (Docket #107 at 13). If he could not do so, the Court would be required to dismiss the remaining claims outright because the original source exception would not apply, and the Court would thus lack jurisdiction as a result of 31 U.S.C. § 3730(e)(4)(A)'s jurisdictional bar. On the other hand, if Relator established that he had voluntarily disclosed the relevant information prior to filing suit, then the original source exception would apply, and the Court would have jurisdiction over the case.

1.2     Relator's Submissions and Parties' Further Briefing

Attempting to establish that he had voluntarily provided the required information to the Government before filing his suit, Relator submitted a number of documents. Specifically, he submitted:

(1)    an email he received from then-Representative Tammy Baldwin in response to an email he had previously sent her about issues in Defendants' schools (Docket #109, Ex. A);

(2)    a similar email response from Representative Virginia Foxx, dated February 21, 2011 (Docket #109, Ex. B);

(3)    emails between Relator and an employee of Wisconsin's Educational Approval Board ("EAB"), dated April 1, 2009, though February 7, 2012 (Docket #109, Ex. C);

(4)    emails between Relator and an accreditation agency, dated May 18, 2009, through May 13, 2011 (Docket #109, Ex. D);

---

³In its order on Defendant's motion to dismiss, the Court analyzed a separate jurisdictional bar, the first-to-file bar, 31 U.S.C. § 3730(b)(5), and determined that it does not apply. The first-to-file bar does not play a role in the inquiry the Court is now conducting and, therefore, the Court need not elaborate upon this topic any further.

(5) emails between Relator and a fellow employee at Sanford-Brown, dated February 15, 2011, through February 16, 2011 (Docket #109, Ex. E); and

(6) various documents related to Relator's July 20, 2012, letters to the Milwaukee U.S. Attorney's Office and the U.S. Attorney General, which included a preliminary copy of Relator's complaint (the Court will refer to these letters and attachments collectively as the "letters to the U.S. Attorney") (Docket #112, Exs. A–G).[4]

The Court ordered that the parties submit briefs regarding whether these documents should be considered legally sufficient to establish compliance with 31 U.S.C. § 3730(e)(4)(B)'s voluntary disclosure requirement. (Docket #110).

The Government filed the first brief. It took no position on whether Relator's emails to Representative Baldwin and Representative Foxx should be deemed sufficient to satisfy the voluntary disclosure requirements. (Docket #113 at 2). Likewise, the Government did not even mention Relator's emails to employees of the EAB, accreditation agency, or Sanford-Brown. (Docket #113). However, it did opine that the letters to the U.S. Attorney "might satisfy" the voluntary disclosure requirement. (Docket #113 at 2).

Relator, meanwhile, argues that his emails to Representatives Baldwin and Foxx and the EAB, along with his letters to the U.S. Attorney, satisfy the

---

[4]Relator was, apparently, hardly aware of these letters, because he did not submit copies of them until *after* the Court had already ordered briefing on the issue of whether the first five submissions should be legally sufficient to establish compliance with 31 U.S.C. § 3730(e)(4)(B)'s voluntary disclosure requirements. (*See* Docket #110, #111, #112). In fact, his submission was untimely. (*Compare* Docket #107 at 16 (requiring submission of materials not later than March 19, 2014), *with* Docket #111 and #112 (both submitted on March 20, 2014)). Despite that fact, the Court will treat the letters as if they were timely submitted, seeing as the parties briefed their relevance to the voluntary-disclosure issue.

voluntary disclosure requirement.[5] He maintains that they were voluntary, made to the Government, disclosed before he filed an action, and adequately provided information to the Government. (Docket #114 at 3–9).

Defendants disagree, asserting that: Relator's disclosures did not provide the Government with all of the information upon which his claim is based; that disclosures to a congressperson or an employee of the EAB are not made to the Government for purposes of the voluntary disclosure requirement; and that the letters to the U.S. Attorney did not provide sufficient notice to the Government. (Docket #115 at 2–6).

With the parties' submissions in hand, the Court now turns to address this remaining issue.

2. DISCUSSION

The remaining issue is, in fact, very discrete. All that remains for the Court to determine is whether any of the documentation submitted by Relator is sufficient to satisfy 31 U.S.C. § 3730(e)(4)(B)'s voluntary disclosure requirement.

To be sure, there are multiple subparts to this analysis. The voluntary disclosure requirement, itself, can be parsed into several elements: (1) that Relator made the disclosure voluntarily; (2) that Relator made the disclosure to the Government; (3) that Relator made his disclosure prior to filing his

---

[5]Relator seems to have abandoned any assertion that his emails to employees of the accreditation agency and Sanford-Brown should satisfy the voluntary disclosure requirement. He does not mention them in his brief to the Court. (*See* Docket #114). Rightly so: neither employee could possibly be construed as working for "the Government," thus preventing any communication to those individuals from satisfying one of the elements of the voluntary disclosure requirement. The Court will largely ignore those communications for the duration of this order.

complaint;[6] and (4) that Relator's disclosure provided all of the information on which his claim is based. *See* 31 U.S.C. § 3730(e)(4)(B) (requiring the first three elements by its plain text); *Farmington*, 166 F.3d at 866 (requiring that relator must have "provided the information upon which her *qui tam* claim is based to the government").[7]

With that framework in place, the Court turns to evaluating each of the pieces of documentation that Relator submitted to determine whether any piece meets all four elements of the voluntary disclosure requirement.

### 2.1 Emails to Representatives Baldwin and Foxx

The Court will assume, *arguendo*, that Relator's emails to Representative Baldwin and Representative Foxx were both voluntary and made prior to the time Relator filed his complaint. Even so, there are still two significant issues with these disclosures, both of which prevent the Court from finding that these emails satisfy the voluntary disclosure requirement.

First, the Court questions whether Relator's emails to Representative Baldwin and Representative Foxx should be viewed as sufficient to meet the second element of the voluntary disclosure requirement. The Court—along with Defendants (Docket #115 at 3 (citing *Farmington*, 166 F.3d at 866; *In re*

---

[6] Defendants argue that this element requires "*sufficient* notice" to the Government, as opposed to mere notice. (Docket #115 at 4 (emphasis added) (citing *United States v. Bank of Farmington*, 166 F.3d 853, 866 (7th Cir. 1999)). In essence, Defendants suggest that notice prior to complaint-filing is not enough; that, instead, Relator was required to file his notice with the Government as early as possible so as to provide the Government *meaningful* notice and time to act on the disclosures. (Docket #115 at 4–5 (citing *United States ex rel. Ackley v. Int'l Bus. Machines Corp.*, 76 F. Supp. 2d 654, 668 (D. Md. 1999)). This is a very meddlesome issue that the Court will take up later in this order.

[7] *Farmington* was overruled in part on other grounds by *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009). *Glaser* left all of *Farmington's* relevant holdings intact.

*Natural Gas Royalties Qui Tam Litig.*, 467 F. Supp. 2d 1117, 1202 (D. Wyo. 2006))) and, apparently the Government too (Docket #113 at 2)—has serious doubts about whether it should classify emails to Congressmembers as disclosures to the Government. The Seventh Circuit, in *Farmington*, noted that a "*qui tam* plaintiff might satisfy th[e Government-disclosure] requirement by notifying the United States Attorney, the FBI, or other suitable law enforcement office…[or] agency or official responsible for the particular claim in question." 166 F.3d at 866. To be sure, the Seventh Circuit hedged that statement, saying that informing the listed enforcement agencies is not the "exclusive method[]" by which to satisfy the voluntary disclosure requirement. *Id.* Nonetheless, the Seventh Circuit's statement appears to be concerned that a relator make its disclosures to an enforcing branch of the Government—one that might be able to *do something* with information it receives. *See id.* Constituent emails to Congressmembers do not seem to closely fit that mould.

On the other hand, a constituent email may very well prompt a concerned Congressmember to act, perhaps through urging a Congressional investigation. Moreover, the legislative history of 31 U.S.C. § 3730(e)(4)(B) includes the following statement:

> The use of the term "Government" in the definition of original source is meant to include any Government source of disclosures cited in subsection (5)(A); that is, Government includes Congress, the General Accounting Office, any executive or independent agency as well as all other governmental bodies that may have publicly disclosed the allegations.

132 Cong. Rec. S11238-04, 1986 WL 783415 (clarifying language in a section titled "QUI TAM," following an amendment proposed by Senator Charles Grassley, and introduced by Senator Bob Dole; Senator Grassley's

amendment was the first to propose the original source exception, then denoted in proposed subparagraph (e)(5)(B), adopted and later changed to (e)(4)(B) without alteration of its language). Thus, presumably, Congress intended the voluntary disclosure requirement's Government-disclosure element to include disclosures made to Congress.

All of this is ultimately irrelevant, though, because the emails to the representatives cannot possibly satisfy the fourth requirement. As the Court mentioned above, Relator bears the burden of proof in the jurisdictional analysis. *Glaser*, 570 F.3d at 913. Thus, it is his burden to establish that he provided the information on which his claim is based to the Government. *See, e.g., id.*; 31 U.S.C. § 3730(e)(4)(B); *Farmington*, 166 F.3d at 866. He has not done so. In this regard, Relator has provided the Court with evidence that is severely lacking. From Representative Baldwin, he has submitted only a screen shot of a *portion* of an email he sent to her. (Docket #109, Ex. A). And that portion does not include very much information; in it, he asks Representative Baldwin about the legality of certain activities and provides very minimal information about what he believes to be illegal activities. (Docket #109, Ex. A). His evidence from Representative Foxx is even more threadbare. He provided only a form response email from her, which acknowledged that he had sent an email, but did not mention any information that he provided to her. (Docket #109, Ex. B). For all the Court knows, his email to her could have touched on issues entirely outside of the allegations in his *qui tam* action.

In sum, even if Relator's emails to Representatives Baldwin and Foxx comprise disclosures to the Government, Relator has not carried his burden to show that those emails provided the information on which his *qui tam*

claims are based. Therefore, Relator's emails to the representatives cannot form the basis to apply the original source exception to Relator.

### 2.2 Emails to EAB Employee

Likewise, Relator's emails to a Wisconsin EAB employee also cannot form the basis to apply the original source exception.

The EAB emails were not disclosed to the Government, as defined in 31 U.S.C. § 3730, and therefore do not satisfy the second element of the voluntary disclosure requirement. Defendants are correct that the word "Government," as discussed in 31 U.S.C. § 3730, refers to the federal government, as opposed to state governments. 31 U.S.C. § 3730(e)(4)(B)'s reference to the "Government" is no different—it is capitalized, just as in every other provision of 31 U.S.C. § 3730, including 31 U.S.C. § 3730(b)(2), which Defendants correctly point out refers to bringing an action "in the name of the Government," on behalf of the United States.

In sum, because the EAB emails were not disclosed to the federal government, the Court is obliged to find that they do not satisfy the voluntary disclosure requirement. Accordingly, they cannot form the basis to apply the original source exception to Relator.

### 2.3 Emails to Accreditor and Sanford-Brown Employee

As discussed more fully in footnote 5, *supra*, Relator seems to have abandoned any argument that his emails to an accreditation agency employee or a fellow employee at Sanford-Brown could satisfy the voluntary disclosure requirement. Indeed, there is no possible way that emails to those individuals could satisfy the government-disclosure element. Therefore, the Court must find that these emails do not satisfy the voluntary disclosure requirement and, as such, cannot form the basis to apply the original source exception to Relator.

2.4    Letters to the U.S. Attorney

Relator's letters to the U.S. Attorney, on the other hand, satisfy the voluntary disclosure requirement.

To begin, there can be no doubt that those submissions satisfy the first, second, and fourth elements of the voluntary disclosure requirement. First, Relator made the disclosure voluntarily. He sent the letters of his own volition.

Second, he sent the letters to the Governmental body contemplated by 31 U.S.C. § 3730(e)(4)(B). In *Farmington*, the Seventh Circuit noted that a *qui tam* plaintiff could satisfy the voluntary disclosure requirement "by notifying the United States Attorney." 166 F.3d at 866. Seeing as that is precisely what Relator did here, the Court finds that his letters to the U.S. Attorney suffice to satisfy the second element of the voluntary disclosure requirement.

As to the fourth element, Relator submitted a draft version of his first complaint. (*See* Docket #112, Exs. A–G). Those draft complaints provided the same detailed information upon which Relator now bases his claim. Thus, the Court must conclude that his letters to the U.S. Attorney satisfy the voluntary disclosure requirement's fourth element.

The third element presents a much closer call, though. That element requires that Relator make his disclosure prior to filing his complaint. That seems simple enough, but Defendants make the valid point that Relator's letters arrived at the U.S. Attorney's office only three days before he filed his complaint in this matter. (Docket #115 at 4). This, Defendants point out, did not provide the Government with any meaningful notice prior to the complaint. (Docket #115 at 4–5). The Government did not have any time to investigate the information prior to Relator filing his complaint. (Docket #115 at 4–5). At the very least, that point raises a valid question: what is the

purpose of 31 U.S.C. § 3730(e)(4)(B)'s pre-complaint disclosure element? If relators can satisfy the element by submitting a draft complaint to the Government mere days or even hours before formally filing their complaint, what good does it do for the Government?

Those logical questions aside, the Court finds that there is ample legal reason to accept Relator's letters to the U.S. Attorney as satisfying the pre-complaint disclosure element. First, the plain language of the statute compels that reading. 31 U.S.C. § 3730(e)(4)(B) requires only that a relator have "provided the information to the Government before filing an action under this section." Taking this phrase literally, the Court must conclude that Relator's letters comply. They were certainly received by the Government before Relator filed his complaint. Thus, Relator provided the requisite information to the Government before he filed his complaint. Indeed, so long as Relator had gotten his letters to the Government even *one minute* before filing his complaint, it seems that he could comply with the pre-complaint disclosure element.

Defendants take exception to that conclusion, pointing out that it appears to lack a logical purpose; Defendants cite some case law in support of this argument, but the Court is not persuaded. The *Farmington* court stated that:

> it is clear that the [voluntary disclosure] requirement is not satisfied by informing the government at the time of filing the action, even in compliance with the requirement that a private plaintiff must provide the government, at the time of filing, with "a copy of the complaint and written disclosure of substantially all material evidence and information the person possesses."

166 F.3d 866 (quoting 31 U.S.C. § 3730(b)(2)). In other words, a relator's mere compliance with 31 U.S.C. § 3730(b)(2), which controls disclosures of the

complaint and other documents at the filing of the case, is not enough to satisfy 31 U.S.C. § 3730(e)(4)(B)'s separate voluntary disclosure requirement. *See Farmington*, 166 F.3d at 866. *See also id.*, at 867 (Wood, J., concurring ("The voluntary disclosure requirement in 31 U.S.C. § 3730(e)(4)(B) is distinct from the requirement in 31 U.S.C. § 3730(b)(2) that a *qui tam* plaintiff provide the government with a copy of her complaint so that the government can decide whether to proceed with the action on its own behalf."). Defendants point out that several other federal courts have reached the same conclusion. (Docket #115 at 5–6 (citing *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 846 (E.D. Va. 2013); *U.S. ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280 (10th Cir. 2001))).

Even so, Relator's letters to the U.S. Attorney differed in slight—but ultimately significant—ways from submissions that would otherwise be compelled under 31 U.S.C. § 3730(b)(2). To begin, his letters were purely voluntary. Moreover, he sent them prior to the actual filing of the suit. He did, indeed, caption them "Re: *Qui Tam* Filing Pursuant to 31 U.S.C. § 3730(b)(2)," but that fact does not necessarily mean that the Court must construe them as 31 U.S.C. § 3730(b)(2) submissions. 31 U.S.C. § 3730(b)(2) requires the complaint to be filed with the Court *in camera*, but Relator did not do so until he formally filed his complaint, several days after sending his letter.

In sum, while the *substance* of Relator's letters to the U.S. Attorney closely resembles a 31 U.S.C. § 3730(b)(2) submission, the *form* of the letters (the voluntary nature of their disclosure, their timing, the fact that they were not accompanied by an *in camera* submission to the Court) shows that they were slightly different. Therefore, the Court cannot treat them as 31 U.S.C.

§ 3730(b)(2) submissions, and *Farmington* does not apply to prevent them from being treated as 31 U.S.C. § 3730(e)(4)(B) disclosures.

Defendants also cite *Ackley* for the proposition that a voluntary disclosure must be made as early as possible, and that it is clear that "just a few moments, hours or days before will not do." (Docket #115 at 5 (citing *Ackley*, 76 F. Supp.2d at 668)). *Ackley* is, however, a rather dated case (from 1999), issued by a district court outside of this circuit (the District of Maryland). It is, therefore, only persuasive authority, and not very persuasive at that. The *Ackley* court based its relevant statement on an analysis of the Seventh Circuit's decision in *Farmington*, together with an analysis of various secondary sources which, on closer scrutiny, do not hold up. *Ackley*, 76 F. Supp. 2d at 667–668 (quoting *Farmington*, 166 F.3d at 865–66).

However, the *Farmington* court did not craft any clear-cut rule requiring that a disclosure be made at a specific time prior to the filing of the complaint. *See, e.g.*, *Farmington*, 166 F.3d at 866. The closest *Farmington* came to crafting a rule was its statement that "'the intent of the Act…is to encourage private individuals who are aware of fraud against the government to bring such information forward at the earliest possible time and to discourage persons with relevant information from remaining silent.'" *Id.* (quoting *United States ex rel. Barth v. Ridgedale Elec. Inc.*, 44 F.3d 699, 704 (8th Cir. 1995)). But *Farmington* did not explicitly impose such a rule. Moreover, that rule would be notoriously unworkable, as it would require an extremely fact-sensitive and highly-contentious evidentiary determination *any time* a relator claimed to be an original source. It would be practically impossible for courts to decide the "earliest possible" point at which a relator should make the required disclosures.

The strongest secondary source cited by the *Ackley* court provides a slightly brighter-line rule: it recommends providing disclosures one to two weeks in advance of filing a complaint. 76 F. Supp. 2d at 668 (citing Jeffrey A. Lovitky, *Qui Tam Litigation: A Practical Primer*, 35–JAN Trial 68, 72 (1999)). But this test is still very flexible, allowing for disclosures to be made over the broad time span of one to two weeks (and if the difference between one and two weeks does not matter, why should there be a concern if the disclosures are made five days in advance? or three?). Moreover, it simply lacks a basis in the plain text of the statute. The text of the statute does not impose any temporal requirement aside from the directive that the 31 U.S.C. § 3730(e)(4)(B) disclosures be made before a relator files his complaint.

The Court has closely examined the legislative history of the statute—both as it was originally passed and as it was recently amended, as part of the Affordable Care Act—and has not discovered anything that would shed light on this issue. There is certainly nothing to clearly support Defendants' sufficiency of notice argument. The most pertinent statement came from Senator Grassley's statement as a sponsor of the amendment language that added the original source exception:

> In the definition of "original source," the requirement that the individual "voluntarily" informed the Government or news media is meant to preclude the ability of an individual to sue under the qui tam section of the False Claims Act when his suit is based solely on public information and the individual was a source of the allegations only because the individual was subpoenaed to come forward. However, those persons who have been contacted or questioned by the Government or the news media and cooperated by providing information which later led to a public disclosure would be considered to have "voluntarily" informed the Government or media and therefore considered eligible qui tam relators.

132 Cong. Rec. S11238-04, 1986 WL 783415 (clarifying language in a section titled "QUI TAM," following an amendment proposed by Senator Charles Grassley). That statement, of course, does not directly address the timing issue, but it does shed some light on the general nature of the voluntary disclosure requirement. It is, perhaps, best understood as intended to prevent original source recognition for individuals who provide information to the Government only as a result of being compelled to do so. In that case, the timing of a relator's 31 U.S.C. § 3730(e)(4)(B) disclosure—whether it is made three days or three weeks or three months in advance—matters very little.

In the end, this issue is difficult only if the Court chooses to make it so. Perhaps its purpose is confusing. Perhaps the *Ackley* court's notice sufficiency analysis is more logical. Perhaps the statute should be amended to more clearly include a time requirement.

But, as it stands, the statute is simple and clear on its face: so long as Relator provided his disclosure letters to the U.S. Attorney prior to filing his complaint, he satisfies the third element of the voluntary disclosure requirement. The U.S. Attorney received Relator's letters three days before Relator filed his complaint. That clearly satisfies the third element of the voluntary disclosure requirement. Accordingly, the Court is obliged to determine that Relator's letters to the U.S. Attorney meet the voluntary disclosure requirement.

3.  CONCLUSION

The Court having now determined that Relator satisfies the direct and independent knowledge requirement (Docket #107, 9–11), along with the voluntary disclosure requirement (Section 2.4, *supra*), must conclude that Relator is an original source and entitled to the original source exception to the jurisdictional bar. *See* 31 U.S.C. § 3730(e)(4)(B). He is, therefore, entitled

to proceed on the remaining claims, namely those arising in the time frame between the beginning of the 2008 school year and Relator's departure in January of 2009.

The Court has received the parties' request that the Court rule on the outstanding motion for summary judgment (Docket #117) and several additional motions (Docket #118, #120, #122). The Court will address those matters, in turn. Suffice it to say that, at this juncture, Relator's claims survive.

Accordingly,

IT IS ORDERED that, the Court having analyzed the parties' submissions, the Court is satisfied that Relator qualifies as an original source, pursuant to 31 U.S.C. § 3730(e)(4)(B), and, therefore, the Court has jurisdiction over the remaining claims in this case.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge