UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>and<br><br>BRENT M. NELSON,<br><br>　　　　　　　　　　Relator,<br><br>v.<br><br>SANFORD-BROWN, LIMITED, and<br>ULTRASOUND TECHNICAL<br>SERVICES, INC.,<br><br>　　　　　　　　　　Defendants. | Case No.　12-CV-775-JPS<br><br><br><br>ORDER |

1.　　BACKGROUND

　　1.1　　Parties

Brent M. Nelson ("Nelson"), the relator in this lawsuit filed under the *qui tam* provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b), brings claims on behalf of the United States against defendant Sanford-Brown, Limited (formerly known as Ultrasound Technical Services, Inc.), a for-profit higher education enterprise, alleging fraudulent conduct in connection with claims for federal subsidies under the Higher Education Act. (Docket #12).[1]

---

[1] The United States elected not to intervene in this lawsuit. (Docket #9); 31 U.S.C. § 3730(b)(4)(B). Nelson's amended complaint also named the parent company of Sanford-Brown, Limited: Career Education Corporation ("CEC"). (Docket #12). CEC has been dismissed from this case. (Docket #47); (Docket #75).

On November 3, 2011, Ultrasound Technical Services, Inc. changed its name to Sanford-Brown, Limited. (Docket #79 at ¶ 2). The Court will refer to these entities (each of which Nelson named as a defendant) as "Sanford-Brown."

From June 2008 to January 2009, Nelson served as the Director of Education at Sanford-Brown's campus in West Allis, Wisconsin ("SB-Milwaukee"). (Docket #79 at ¶ 6); (Docket #95 at ¶ 7).[2] Based upon this short stint of employment with SB-Milwaukee, Nelson brings this case.[3]

Before summarizing Nelson's principal allegations, the Court will briefly address the particular statutory subsection on which this case turns: 20 U.S.C. § 1094(a).

### 1.2 Program Participation Agreements

In order to receive federal subsidies under Title IV of the Higher Education Act, a school must enter into a "program participation agreement" ("PPA") with the United States Secretary of Education. 20 U.S.C. § 1094(a). The statute provides that each PPA "shall condition the initial and continuing eligibility of an institution to participate in a program [for Title IV subsidies] upon compliance with [certain] requirements.…" 20 U.S.C. § 1094(a)(1)-(29). The Court will refer to these requirements as "Title IV Restrictions."

---

[2] West Allis, Wisconsin, is located within Milwaukee County.

[3] Sanford-Brown moved to dismiss Nelson's amended complaint (Docket #12) as jurisdictionally-barred under the applicable version of 31 U.S.C. § 3730(e)(4)(A). (Docket #49). Ultimately, the Court determined that its subject matter jurisdiction in this case is limited to Nelson's FCA claims arising from his short stint of employment because that is the extent of Nelson's direct and independent knowledge of the information on which his allegations are based. (Docket #107 at § 4.1.2.2).

### 1.3 Nelson's Principal Allegations

Nelson alleges that SB-Milwaukee recklessly disregarded (and violated) four Title IV Restrictions—(i) 20 U.S.C. § 1094(a)(20) (banning incentive compensation to its employees based on success in securing enrollments or financial aid); (ii) § 1094(a)(21) (requiring the school to, *inter alia*, meet requirements established by its accreditor); (iii) § 1094(a)(22) (requiring the school to refund unearned subsidies); and (iv) § 1094(a)(3) (requiring the school to, *inter alia*, maintain records necessary to ensure proper administration of subsidies) (collectively, the "Disputed Title IV Restrictions")—and nevertheless: (a) promised, in a PPA, to comply with such restrictions; (b) periodically certified compliance with such restrictions; and (c) submitted, or caused to be submitted, claims for Title IV subsidies "during the 2008-2009 school year" (Docket #12 at ¶¶ 8, 24, 25, 32 and 48-79); (Docket #107 at § 4.1.2.2); (Docket #81).[4]

---

[4]Nelson's theories under the second, third and fourth statutory subsections – §1094(a)(21), §1094(a)(22) and §1094(a)(3)—are not self-evident from the statutory text.

Section1094(a)(21) requires schools to meet requirements established by their accreditor(s). Nelson claims that SB-Milwaukee submitted misleading data regarding faculty performance and student job placements to its accreditor (the Accrediting Council for Independent Colleges and Schools ("ACICS")) with reckless disregard to the accuracy of the data (Docket #81 at § II.A.2); (Docket #107 at § 4.1.2.2.2).

Section 1094(a)(22) requires schools to refund unearned subsidies. Nelson claims that SB-Milwaukee employees falsified student attendance records to mitigate refunds. (Docket #80 at § 1.F.).

Section 1094(a)(3) requires schools to maintain records necessary to ensure proper administration of subsidies. Nelson claims that SB-Milwaukee tampered with its grading scale in certain courses in order to keep certain students eligible to receive Title IV federal subsidies. (Docket #81 at 19-21).

Based on these allegations, Nelson brings claims under two statutory subsections of the FCA:

- 31 U.S.C. § 3729(a)(1)(B) (imposing civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim").[5] (Docket #12 at 24); (Docket #38); (Docket #39 at 10); (Docket #47 at 5-7).[6]

- 31 U.S.C. § 3729(a)(1) (imposing civil liability on any person who knowingly presents, or causes to be presented, to the

---

[5] In 2009, Congress amended the False Claims Act, Pub. L. 111-21, § 4(a)(1), making those amendments generally applicable only to conduct occurring on or after May 20, 2009, Pub. L. 111-21, § 4(f). The one exception is the amendment to section 3729(a)(1)(B), which applies to *cases*, such as this, that were pending on or after June 7, 2008. *Id.*

*U.S. ex rel. Yannacopoulos v. General Dynamics,* 652 F.3d 818, n.2 (7th Cir. 2011) (emphasis added).

[6] Page references refer to ECF pagination unless the context requires otherwise.

United States a false or fraudulent claim for payment or approval). (Docket #12 at 23).[7, 8]

Before the Court is Sanford-Brown's motion for summary judgment on all of Nelson's claims. (Docket #60).

2.  SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

---

[7] As noted *supra*, the relevant conduct in this case extends no further than January 2009 (the month in which Relator left his employment at SB-Milwaukee and consequently ceased being an "original source" within the meaning of 31 U.S.C. § 3730(e)(4)). (Docket #107 at 15). Therefore, the Court applies Section 3729(a)(1) (as opposed to that statutory subsection's successor, effective May 20, 2009, Section 3729(a)(1)(A)). *See supra* at n.5.

[8]  Although the FCA uses the seemingly straightforward word "knowingly," the statute's state of mind element is actually quite nuanced. To establish liability under the FCA, the defendant must have acted with "actual knowledge," or with "deliberate ignorance" or "reckless disregard" to the possibility that the submitted claim was false. 31 U.S.C. § 3729(a)(1)(A), (b). Therefore, while "[i]nnocent mistakes or negligence are not actionable under [the FCA]," *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 832 (7th Cir.2011) (citation omitted), the statute does not require a "specific intent to defraud," 31 U.S.C. § 3729(b)(1)(B). …[T]he third mental state—"reckless disregard"—[] is the most capacious of the three. [T]he FCA has contained the "reckless disregard" language for almost thirty years….

*U.S. v. King-Vassel*, 728 F.3d 707, 712 (7th Cir. 2013).

317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether a genuine dispute of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

3. SB-MILWAUKEE'S PPA

    3.1    2005 PPA

In September of 2005, Sanford-Brown's campus in Fenton, Missouri, entered into a PPA with the U.S. Department of Education ("2005 PPA"). (Docket #64-1); (Docket #79 at ¶ 20). The 2005 PPA provides, in relevant part, that "[t]he Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility…" including the Disputed Title IV Restrictions. (Docket #64-1 at 3-6). As of June 16, 2006, SB-Milwaukee was an additional campus covered under the 2005 PPA. (Docket #79 at ¶ 21); (Docket #64-1 at 2); (Docket #64-2).

At the time the 2005 PPA was signed, the signatory: (i) intended that the campuses covered by the 2005 PPA would operate in compliance with the conditions specified in the 2005 PPA, including institutional eligibility requirements; and (ii) believed that all certifications and statements of fact contained in the 2005 PPA were true and accurate. (Docket #79 at ¶¶ 23-24).

### 3.2 2007 PPA

In December of 2007, Sanford-Brown's campus in Jacksonville, Florida, entered into a PPA with the U.S. Department of Education ("2007 PPA"). (Docket #65-1); (Docket #79 at ¶ 25). The 2007 PPA provides, in relevant part, that "[t]he Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility…" including the Disputed Title IV Restrictions. (Docket #65-1 at 2-3 and 6). On May 15, 2008, with the U.S. Department of Education's approval, SB-Milwaukee was removed from the 2005 PPA and added as an additional campus covered under the 2007 PPA. (Docket #79 at ¶ 26).

At the time the 2007 PPA was signed, the signatory: (i) intended that the campuses covered by the 2007 PPA would operate in compliance with the conditions specified in the 2007 PPA, including institutional eligibility requirements; and (ii) believed that all certifications and statements of fact contained in the 2007 PPA were true and accurate. (Docket #79 at ¶¶ 28-29).[9]

---

[9]Sanford-Brown proposed the facts set forth in this paragraph. (Docket #61 at ¶¶ 28-29). In response to these proposed facts, Nelson (through counsel) wrote: "Deny. *See* Relator's Memorandum in Opposition to Defendant's [sic] Motion for Summary Judgment (and accompanying exhibits)." (Docket #79 at ¶¶ 28-29).

Nelson's response plainly violates Civil Local Rule 56(b)(2)(B)(i) (providing that a party opposing a motion for summary judgment must file "a concise response to the moving party's statement of facts that *must contain* . . . in the case of any disagreement, *specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon.*") (emphasis added). Uncontroverted statements of material fact are deemed admitted for the purpose of deciding summary judgment. Civ. L. R. 56(b)(4).

4. ANALYSIS

    4.1    Section 3729(a)(1)(B): Fraudulent Certification

For his claim under § 3729(a)(1)(B)—which imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"—Relator offers two theories: one grounded in the statute's plain language (express false certification), and the other not (implied false certification).

A claim under § 3729(a)(1)(B) has three essential elements: (1) the defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) the defendant knew it was false. *See Yannacopoulos*, 652 F.3d at 822; *see also United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 604 (7th Cir. 2005).

        4.1.1    Express False Certification(s)

Seizing upon the teachings of *Yannacopoulos*, Sanford-Brown's motion for summary judgment challenged Nelson to identify evidence of an *express* misrepresentation (made with a sufficiently culpable mental state) regarding SB-Milwaukee's compliance with the Disputed Title IV Restrictions. (Docket #62 at 28-29) (Warning that Nelson may ask the Court to endorse a theory of fraud by *implied* misrepresentation "[given the absence of an actual misrepresentation….").

            4.1.1.1    2005 PPA and 2007 PPA

By ratifying the PPA, SB-Milwaukee agreed that it "will comply" with the Disputed Title IV Restrictions. (Docket #64-1 at 3-6); (Docket #65-1 at 2-3 and 6); *see generally* Section Three *supra*. However, Nelson offers no evidence whatsoever regarding SB-Milwaukee's mental state *when it was added as an additional campus covered under the PPA. See* (Docket #81); (Docket #97 at 20);

(Docket #229 at 14); *see* (Docket #236).[10] Therefore, the record in this case does not sustain a theory of fraudulent inducement. *See generally, U.S. ex rel. Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005).[11]

### 4.1.1.2   Other Certifications?

Without citation to the evidentiary record, Nelson alleges (by reference to statutory provisions) that SB-Milwaukee must have filed (or caused to be filed) express compliance certifications in connection with its alleged participation in certain Title IV funding programs (*e.g.*, Pel Grants, Federal Supplemental Educational Opportunity Grants, and Stafford loans). (Docket #81 at 28-29); (Docket #229 at 13); *see* (Docket #236). Nelson's bald accusations plainly fail to satisfy his burden of production.

Accordingly, the Court will turn to Nelson's theory of implied certification.

---

[10]Nor does Nelson offer any evidence whatsoever with regard to Sanford-Brown's mental state when: (i) the PPA were initially executed; or (ii) SB-Milwaukee was added as an additional campus covered under the PPA. *See* (Docket #81); (Docket #97 at 20); (Docket #229 at 14); *see* (Docket #236).

[11]At the Court's invitation (Docket #229), the United States filed a total of eighteen pages of supplementary briefing in which the United States "takes no position on the factual sufficiency of relator's case." (Docket #233 at 2); *see* (Docket #240 at n.1). Notwithstanding that disclaimer, the United States claims (*without* citation to the evidentiary record) that this case involves "unquestionably express" representations "set forth in writing" in the PPA. (Docket #233 at 2). In that regard, the United States' briefing is deeply unhelpful and ultimately unavailing. *See generally,* Civil Local Rule 56(b)(2)(B)(i) (providing that a party opposing a motion for summary judgment must file "a concise response to the moving party's statement of facts that *must contain*…in the case of any disagreement, *specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon.*") (emphasis added).

### 4.1.2 Implied False Certification(s)

Nelson (joined by the government) asks this Court to adopt an "implied false certification" theory of liability under Section 3729(a)(1)(B) whereby "every claim for payment submitted under Title IV constitutes an 'implied certification' of compliance with the PPA, …." (Docket #81 at 32-33); *see* (Docket #233 at 5-8) and (Docket #240 at 4-6). Without citation to pertinent legal authority (and, by its own disclaimer, untethered from the evidentiary record in this case), the government argues as follows: "[a] defendant's non-disclosure, at the time payment is sought, of the fact that it failed to fulfill a *previous* promise upon which entitlement to payment is conditioned, is *functionally equivalent* to an explicit false representation or certification that it is entitled to payment." (Docket #233 at 3) (emphasis added).

However, Nelson and the government fail to cite any controlling authority endorsing their "implied false certification" theory of FCA liability. (Docket #81); (Docket #233); (Docket #236); (Docket #240). Moreover, this Court finds none.

Rather, in this Court's view, the Seventh Circuit's application of Section 3729(a)(1)(B) to the facts in *Yannacopoulos* is instructive:

> Between February 1987 and August 1990, General Dynamics submitted a number of invoices to the United States for payment. On each invoice, General Dynamics certified that, "to the best of [its] knowledge and belief this invoice is in accordance with" Contract 5/86 and the Certification Agreement. These certifications are significant because a mere breach of contract does not give rise to liability under the False Claims Act. *See United States ex rel. Karst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). If the breaching party falsely claims to be in compliance with the contract to obtain payment, however, there may an actionable false claim. *United States ex rel. Lemon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1168

(10th Cir. 2010) (describing such a statement as a "legally false request for payment"), citing *United States ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1217 (10th Cir.2008).

652 F.3d at 824.

Likewise, in *Gross*, the Seventh Circuit required "actual and particularly-identified false representations" to state a claim under this statutory subsection. 415 F.3d at 605.

With the benefit of the teachings of *Yannacopoulos* and *Gross*, this Court declines to expand FCA liability under Section 3729(a)(1)(B) as Nelson and the government propose.

### 4.2 Section 3729(a)(1): Fraudulent Presentment

> To establish a claim under [Section 3729(a)(1)], a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.

*U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740-741 (7th Cir. 2007) (citation omitted) (overruled in part on other grounds by *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920 (7th Cir. 2009)); (Docket #81 at 8); (Docket #193-15 at 3).

Against the plain language of these three elements, Sanford-Brown contends that: "[W]ithout a misrepresentation, there is no false claim. *See U.S. ex rel. Gross v. AIDS Res. Alliance–Chicago*, 415 F.3d 601, 605 (7th Cir..2005)." (Docket #62 at 26). But Sanford-Brown's citation does not support its sweeping proposition: the analysis in *Gross* is limited to the "false record or statement" subsection of the FCA: Section 3729(a)(1)(B) (codified at 31 U.S.C. § 3729(a)(2) at the time *Gross* was decided).

In the alternative, Sanford-Brown argues that none of SB-Milwaukee's claims for federal subsidies was false because: (i) none of the PPAs was fraudulently induced, *see* Section 4.1.1.1 *supra*; and (ii) compliance with the Disputed Title IV Restrictions is not a condition of government payment. (Docket #62 at 29-34); *see generally*, *Gross*, 415 F.3d at 604 ("An FCA claim premised upon an alleged false certification of compliance with statutory or regulatory requirements also requires that the certification of compliance be *a condition of or prerequisite to government payment.*") (emphasis added) (citations omitted).

In response, Nelson highlights the statutory text preceding the Disputed Title IV Restrictions:

> In order to be an eligible institution…an institution…shall …enter into a program participation agreement with the Secretary. The agreement shall condition the initial and continuing eligibility of an institution to participate in a program upon compliance with the following requirements [(which include the Disputed Title IV Restrictions)].

20 U.S.C. § 1094(a); (Docket #81 at 31). Furthermore, Nelson directs the Court's attention to the implementing regulation's pertinent text:

> A program participation agreement conditions the initial and continued participation of an eligible institution in any Title IV, HEA program upon compliance with the provisions of this part [(which include the Disputed Title IV Restrictions)], the individual program regulations, and any additional conditions specified in the program participation agreement that the Secretary requires the institution to meet.

34 C.F.R. § 668.14(a)(1).[12]

Neither party in this case musters up any controlling authority divining whether or not the above-quoted passages render the Disputed Title IV Restrictions conditions of payment. *See* (Docket #62 at 29-34); *see also* (Docket #81 at 30-32) and (Docket #97 at 10-12). This Court is aware of none.

In this Court's view, the implementing regulation's more exacting language is revealing: "A program participation agreement *conditions* the initial and continued *participation* of an eligible institution…upon compliance with…." 34 C.F.R. § 668.14(a)(1) (emphasis added).

The U.S. Court of Appeals for the Tenth Circuit recognizes a "significant distinction" between "conditions of payment" and "conditions of participation" in FCA cases:

> Conditions of participation…are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government program. …Conditions of payment are those which, if the government knew they were not being followed, *might* cause it to actually refuse payment.

*U.S. ex rel. Conner v. Salina Regional Health Center, Inc*, 543 F.3d 1211, 1220 (10th Cir. 2008) (emphasis added).

This Court declines to endorse *Conner*'s nebulous definition of conditions of payment, as Nelson requests. (Docket #81 at 30-31). Rather, this Court grounds its analysis in the text of 20 U.S.C. § 1094(a) and 34 C.F.R. § 668.14(a)(1), as quoted above, and finds no clear manifestation of

---

[12]Both the 2005 PPA and the 2007 PPA ostensibly ask less of SB-Milwaukee: "The *execution* of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program." (Docket #64-1 at 2) (emphasis added); (Docket #65-1 at 1) (emphasis added).

Page 13 of 14

Case 2:12-cv-00775-JPS   Filed 06/13/14   Page 13 of 14   Document 241

congressional or regulatory intent to condition payment of Title IV federal subsidies on compliance with the Disputed Title IV Restrictions.

With the benefit of the foregoing analysis, the Court concludes that Sanford-Brown is entitled to summary judgment on Nelson's fraudulent presentment claim under Section 3729(a)(1).

5. CONCLUSION

In the end, Nelson and the government cast the FCA as a blunt instrument to police compliance with federal contracts, regulations and statutes. To be sure, it is not. *See generally, U.S. ex rel. Steury v. Cardinal Health Inc.,* 625 F.3d 262, 268 (5th Cir. 2010).

Accordingly,

IT IS ORDERED that the defendants' Motion for Summary Judgment (Docket #60) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED on its merits, with prejudice, together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of June, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge